UNITED STATES, Appellee,

v.

**Tomas S. BEDANIA, Storekeeper First Class U. S. Navy, Appellant.**

No. 38,853.

NCM No. 78 1458.

U. S. Court of Military Appeals.

March 1, 1982.

For Appellant: *Warren G. Shimeall, Esq.* (argued); *Lieutenant Commander I. D. Warden, Jr., JAGC, USN, Lieutenant Steven A. Curlee, JAGC, USNR, Captain Joseph M. Poirier, USMC.*

For Appellee: *Lieutenant Wm. Eric Minamyer, JAGC, USNR* (argued); *Commander T. C. Watson, Jr., JAGC, USN* (on brief).

## Opinion of the Court

EVERETT, Chief Judge:

On June 20, 1978, appellant was brought to trial before a special court-martial consisting of military judge alone. He was charged with committing indecent acts with two females under the age of sixteen, in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. Pursuant to a pretrial agreement, he pleaded guilty by exceptions and substitutions to the two specifications.[1] After entering findings of guilty and receiving extensive evidence in mitigation and extenuation, the judge sentenced appellant to a bad-conduct discharge, confinement at hard labor for 2 months, partial forfeitures for 3 months, and reduction to pay grade E–3. This sentence was coupled with a strong recommendation that the bad-conduct discharge and reduction below the pay grade of E–5 "be suspended for the period of confinement ... actually served plus six months thereafter." On September 13, 1978, the convening authority approved the sentence but suspended execution of the bad-conduct discharge and reduction below pay grade E–5. In turn the supervisory authority approved the sentence as suspended, and the United States Navy Court of Military Review affirmed the findings and sentence as suspended. We granted review on this issue (10 M.J. 16):

> THE ACCUSED WAS NOT CORRECTLY ADVISED REGARDING THE EFFECT AND CONSEQUENCES OF HIS GUILTY PLEA WHICH INVOKED A MANDATORY REQUIREMENT HE FACE ADMIN DISCHARGE PROCEEDINGS.

### I

The pretrial agreement under which appellant pleaded guilty provided for suspension of any bad-conduct discharge adjudged; but it contained no reference to administrative discharge. During the providence hearing this exchange took place:

> MJ: I want you to take time now to consult with your defense counsel and then advise me whether you understand the things we have discussed and whether you still desire to enter a plea of guilty.

> TC: Your Honor, while the defense counsel and the accused are conferring I will note for the record the trial counsel's understandings of the agreement are in comport with that of the accused, likewise in my dealing with the convening authority it is my understanding that his understanding also is in comport with the accused. Further,

---

1. The exceptions and substitutions had the effect of mitigating the seriousness of the allegations.

I will note for the record that there have been no agreements concerning administrative discharges whatsoever. That is the accused has not offered nor has the convening authority solicited any agreement concerning whether the accused will or will not be processed with administrative discharge, notwithstanding any terms of the pretrial agreement.

MJ: Is that the understanding of the defense?

DC: Yes, Your Honor, it is.

MJ: Is that the understanding of the accused?

ACC.: Yes, Your Honor.

After his conviction, Bedania was processed for an administrative discharge in accordance with the Bureau of Naval Personnel Manual (BUPERSMAN), which provides that "[p]rocessing" for discharge "is mandatory" for members of the Naval service who commit "indecent acts with or indecent assault upon a child." Para. 3420185–1c.

On consideration of recommendations for retention by appellant's commanding officer and a hearing board, the Assistant Secretary of the Navy approved a general discharge, but ordered that execution of the discharge be suspended for a one-year probationary period. *See* para. 3420181–4h, BUPERSMAN. The administrative discharge has now been remitted and Bedania remains in the Navy.

## II

■ Appellant contends that the clear import of his pretrial agreement, which called for suspension of his punitive discharge, was that if he behaved properly after his conviction by court-martial, he would be allowed to remain in the Navy. However, any such interpretation is forestalled by the colloquy at trial wherein the

defense counsel and appellant concurred in trial counsel's observation that no agreement had been made as to "whether . . . [Bedania] will or will not be processed with [sic] administrative discharge." Appellant now contends that, since he and his counsel had been "conferring" just before trial counsel "note[d] for the record that there have been no agreements concerning administrative discharges whatsoever," they never comprehended the full import of trial counsel's remarks and their apparent concurrence with the prosecutor's interpretation was inadvertent. However, we have no reason to infer that appellant and his trial defense counsel were so reckless as to indicate their concurrence with statements in open court which either they did not hear or did not understand. *Cf. United States v. Joseph*, 11 M.J. 333 (C.M.A.1981); *United States v. Hinton*, 10 M.J. 136 (C.M.A.1981); *United States v. Passini*, 10 M.J. 108 (C.M.A.1980).

■ Even if the pretrial agreement contemplated that appellant would not be administratively discharged from the Navy, he has no claim for relief from the effects of his guilty plea. He has *not* been administratively discharged by reason of his misconduct, and the general discharge approved by the Assistant Secretary of the Navy has now been remitted. Appellant is entitled to the benefit of any bargain on which his guilty plea was premised, *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); but—even under his present interpretation of the plea bargain—Bedania has received the contemplated benefit, for he remains in the Navy and the threat of separation no longer exists.[2] Admittedly, Bedania incurred legal and other expenses and experienced uncertainty and anguish by reason of the effort to discharge him administratively. However, these consequences—even if we assume, contrary to the record of trial, that

2. Similarly, when a pretrial agreement contains provisions which are invalid for some reason, the providence of a guilty plea is not affected so long as the offending provisions are not enforced. *See, e.g., United States v. Cooke*, 11 M.J. 257, 261 n.3 (C.M.A.1981). Likewise, an accused's erroneous belief that a pretrial agreement exists does not affect the providence of his guilty plea if he is granted the same relief for which he thought he had contracted. *Id.* at 261.

376

they were completely unforeseen—do not warrant setting aside the plea of guilty and the findings based thereon.

■ In *United States v. Santos*, 4 M.J. 610 (1977), the Navy Court of Military Review held that a meeting of the minds never occurred on a pretrial agreement, because the accused understood that the pretrial agreement granted him the right to remain in the Navy if he engaged in no further misconduct.[3] We agree with *Santos* that the divorce of administrative-discharge proceedings from the military justice system does not inevitably require that a guilty plea be upheld as provident despite the accused's misapprehension of the possibility or the likelihood that he will be administratively discharged. However, when collateral consequences of a court-martial conviction—such as administrative discharge, loss of a license or a security clearance, removal from a military program, failure to obtain promotion, deportation, or public derision and humiliation—are relied upon as the basis for contesting the providence of a guilty plea, the appellant is entitled to succeed only when the collateral consequences are major and the appellant's misunderstanding of the consequences (a) results foreseeably and almost inexorably from the language of a pretrial agreement; (b) is induced by the trial judge's comments during the providence inquiry; or (c) is made readily apparent to the judge, who nonetheless fails to correct that misunderstanding. In short, chief reliance must be placed on defense counsel to inform an accused about the collateral consequences of a court-martial conviction and to ascertain his willingness to accept those consequences. While the military judge may appropriately ask during the providence hearing whether appellant and his counsel have discussed any possible collateral results of a conviction on the charges to which a guilty plea is being entered, the judge need not undertake on his own motion to ascertain and explain what those results may be.

III

The decision of the United States Navy Court of Military Review is affirmed.

Judges COOK and FLETCHER concur.

3. Unlike the case at bar, Santos apparently still confronted an ongoing administrative discharge proceeding.