CRAWFORD, Chief Judge
(concurring in part and in the result):
We are once again faced with the unfortunate, if not inexcusable, situation where an accused was beyond his ETS date at trial and, apparently, none of the participants recognized the significance of this important fact. See United States v. Williams, 53 MJ 293 (2000); United States v. Hardcastle, 53 MJ 299 (2000); United States v. Albert, 30 MJ 331 (CMA 1990). It would appear to me that when a charge sheet clearly shows that an accused’s current date of service began on “5 Nov 93” for a term of “4 years,” and the accused’s court-martial was held on January 21,1998, someone should have calculated that the accused was beyond his contractual service obligation.
Appellant ceased to be pay eligible on the date findings and sentence were announced (January 21,1998). See Albert, supra at 332, citing 39 Comp. Gen. 42 (1959). Since there was no pay to suspend, forfeit, defer, or otherwise dispose of, it was impossible for the Government to comply with the pretrial agreement, proposed by appellant and his counsel but nonetheless accepted by the convening authority.
During the six months it took to type, assemble, and authenticate appellant’s 100-page guilty plea record of trial (June 17, 1998), and the ensuing five months it took to prepare a four-page staff judge advocate’s recommendation (November 25, 1998), someone discovered that appellant’s pay had stopped on January 21, 1998, the date of his court-martial.
The real issue in this case, as it is in all cases where an appellant alleges that he did not receive all for which he bargained, is whether this appellant understandingly, voluntarily, and intelligently entered into his pretrial agreement. See Brady v. United States, 397 U.S. 742, 747-48 and n. 4, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); ROM 705(c)(1)(A), Manual for Courts-Martial, United States (2000 ed.). Guilty pleas that are induced by false promises, threats, and misrepresentations fail, but those plea bargains that are otherwise voluntarily made or based on a non-substantial misunderstanding of the sentence will stand. See Williams, 53 MJ at 297 (Crawford, C.J., concurring in the result).
This case is closely related to, but not squarely on point with, recent pronouncements from this Court. Unlike the majority below, I do find a meaningful distinction between this case and Albert. In Albert, the convening authority did exactly what he promised to do in the pretrial agreement. There, the pretrial agreement provided that the convening authority would, inter alia, suspend “all forfeitures in excess of $250 pay per month for ... 1 year.” 30 MJ at 331. However, Albert was beyond his ETS date and not entitled to any money. Although the pretrial agreement provided for a suspension of forfeitures that actually provided no relief to the accused, we held that Albert was not entitled to relief because his unilateral misunderstanding was not induced by a representation of the military judge, trial counsel, or convening authority. 30 MJ at 333; see 56 MJ at 273 (majority opinion); see also United States v. Williams, 55 MJ 302, 307 (2001)(no entitlement to relief where there was no representation by the convening authority, military judge, or trial counsel that Williams’s pay would continue beyond his ETS while in confinement).
Without more, this case would be controlled by our holding in Albert. As noted by *281 the dissent below, the military judge changed the posture of this case when he informed appellant that appellant would receive the benefit of his pretrial agreement. I remain convinced that the fact that appellant was facing a maximum term of fifty years confinement had more persuasive impact on his desire to negotiate a pretrial agreement then did his altruistic wish to secure medical benefits for his family members. Nonetheless, appellant’s desire to avoid the collateral consequences associated with his forfeiture of pay may have been a material element of the pretrial agreement. Accordingly, I agree with the majority that the remedy in this case is either specific performance, appropriate alternative relief, or an opportunity to withdraw from the plea agreement. See Santobello v. New York, 404 U.S. 257, 262-63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); see also United States v. Mitchell, 50 MJ 79 (1999); United States v. Olson, 25 MJ 293 (CMA 1987); United States v. Bedania, 12 MJ 373 (CMA 1982).
As Judge Naugle points out in dissent below, the staff judge advocate and convening authority missed a golden opportunity to rectify any mutual misunderstanding. In his request for clemency, appellant asked the convening authority to suspend all confinement in excess of eighteen months for one year and to approve a discharge no greater than a bad-conduct discharge. First and foremost among the reasons for this request and counter-offer was the Government’s inability to fulfill that part of the pretrial agreement waiving forfeitures in favor of appellant’s family members.
Using the principles of accord and satisfaction as a model, the convening authority would have extinguished this appellate issue by accepting appellant’s accord and satisfying him by approving no confinement greater than eighteen months and a bad-conduct discharge. Unlike the majority, I do not see the necessity for a newly “written post-trial agreement.” 56 MJ at 279. In my opinion, appellant could be made whole by approving no greater than a bad-conduct discharge, eighteen months confinement, and paying appellant for the number of months he spent in confinement in excess of eighteen.
Nonetheless, I concur that the Courts of Criminal Appeals are the experts at applying service regulations, to include pay manuals, and are best situated to determine what appropriate relief is available to compensate an appellant and provide him with the benefits for which he bargained pretrial. Accordingly, I join in remanding this case to the Navy-Marine Corps Court of Criminal Appeals for further proceedings.