*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HOLIFIELD, KISOR, and HARRELL
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Eric C. BABBITT**
Logistics Specialist
Second Class Petty Officer (E-5), U.S. Navy
*Appellant*

**No. 202300286**

_____

Decided: 31 March 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Hayes C. Larson (arraignment)
Donald R. Ostrom (motions)
Ryan J. Sears (trial)
Mishonda M. Mosley (post-trial)

Sentence adjudged 1 August 2023 by a general court-martial tried at Region Legal Service Office Mid-Atlantic, Norfolk, Virginia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for thirteen years, forfeiture of all pay and allowances, and a dishonorable discharge.[1]

---

[1] Appellant received 422 days of pretrial confinement credit.

For Appellant:
*LT Jesse B. Neumann, JAGC, USN* (on brief and argued)

For Appellee:
*Lieutenant Lan T. Nguyen, JAGC, USN* (on brief)
*Major Mary Claire Finnen, USMC* (on brief and argued)

Senior Judge KISOR delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Judge HARRELL joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

KISOR, Senior Judge:

Appellant was convicted, consistent with his pleas, of one specification of attempted sexual abuse of a child by indecent exposure, in violation of Article 80, Uniform Code of Military Justice (UCMJ), one specification of sexual abuse of a child by indecent conduct, in violation of Article 120b, UCMJ, and one specification of assault consummated by a battery on a child under 16 years of age, in violation of Article 128, UCMJ.[2]

Appellant asserts three assignments of error (AOE): (1) Did unlawful command influence occur when the Region Legal Service Office intentionally interfered with the convening authority's duty to perform under the plea agreement? (2) Has the Navy unlawfully increased the severity of Appellant's sentence by failing to comply with the Interstate Agreement on Detainers Act (IADA)? And (3) was the Navy's reliance on the sentence interruption provision of Article 14(b), UMCJ, in error because the provision has been repealed by implication under the facts of this case?

We find no prejudicial error and affirm the findings and sentence.

---

[2] 10 U.S.C. §§ 880, 920, 928.

## I. BACKGROUND

Appellant resided in a military base housing community where military families lived. The community was gated, and had facilities including a community center, several playgrounds, and a splash pad. Appellant lived alone, and most of his neighbors were military families with children.

During the summer of 2019, Appellant inappropriately touched one of the neighborhood children, age 8, and pulled on another child's shorts and underwear in order to view her buttocks. She was 9 years old.

In September 2019, Appellant moved off base. In the summer of 2022, Appellant began an online conversation with "C.E.," a person he believed to be a 10-year-old girl living in the United Kingdom. He would ask her to send him pictures of herself, both clothed and unclothed. He sent her several pictures of himself, including five pictures of his exposed penis. As it turns out, C.E. was not a 10-year-old girl but was instead an adult working with law enforcement. On 27 July 2022, Appellant was arrested by the Petersburg, Virginia Police Department and held in civilian jail. He was transferred to Navy custody on 22 August 2022 and placed in pretrial confinement. Appellant was charged with numerous offenses related to sexual abuse of the two children in base housing and the attempted sexual abuse of C.E.

Appellant eventually reached a plea agreement with the convening authority resulting in the dismissal of the majority of the charges and guilty pleas to assault consummated by a battery on one child (by exceptions and substitutions), sexual abuse (indecent conduct) of another child, and attempted sexual abuse (indecent exposure) of C.E. The plea agreement provided for a term of confinement in the range of 8-15 years, although the maximum confinement for the charges to which he pleaded guilty was 32 years of confinement. A dishonorable discharge, total forfeitures, and reduction to paygrade E-1 were also required by the plea agreement. The most serious charges of sexual abuse were withdrawn and dismissed. Appellant was tried on 1 August 2023.

Relevant here, the plea agreement contained a provision—under the subheading "Agreements by the Accused"—that:

> 8.j. If pursuant to the adjudication of a sentence, I meet eligibility criteria established by Navy Personnel Command (PERS-00D1), or other applicable authority and the confinement facility, the convening authority will recommend in writing to the applicable authority that contact be established with PERS-00D1, the brig I am confined in, and the Naval Consolidated Brig Miramar, San Diego, California or the Military Correctional Complex, Fort Leavenworth, Kansas, within 10 days to recommend that I be placed in either of those facilities, both of which are military facilities with

a non-violent sex offender treatment program to serve the period
of confinement. I understand that my placement in a military fa-
cility with a non-violent sex offender treatment program can be
recommended by the convening authority, but that my placement
in such a facility cannot be guaranteed. I further agree to volun-
tarily participate in any sex offender treatment program offered
to me to include truthful admissions of my misconduct required
for rehabilitation.[3]

The convening authority did not make a written recommendation within
ten days, because the Navy had received a request to transfer custody of Ap-
pellant to the Commonwealth of Virginia (where he remains to this day).[4] In-
stead, on 8 August 2023 the Region Legal Service Office (RLSO) (the prosecu-
tion office in this case) requested, and the convening authority endorsed on 10
August 2023, a request to Commander, Navy Personnel Command (PERS 00D)
to hold Appellant post-conviction in the Naval Brig in Chesapeake, Virginia
pending his transfer to the Commonwealth.[5] On 31 August 2023, Appellant
filed a post-trial motion to withdraw his pleas, and set aside the findings and
sentence.[6]

On 6 September 2023, the convening authority sent a recommendation to
Commander, Navy Personnel Command (PERS OOD1) that Appellant "serve
the period of his confinement at Naval Consolidated Brig, Miramar, San Diego,
California or the Military Correctional Complex, Fort Leavenworth, Kansas,
once his [permanent change of station] hold is lifted . . . ."[7]

A post-trial Article 39(a) session occurred on 28 September 2023, and after
taking evidence, the military judge made findings of fact and concluded that
the convening authority's agreement to write the recommendation letter was
"ancillary and not a material term of clause 8[j] of the plea agreement."[8] The

---

[3] App. Ex. XV (plea agreement) at p 9 paragraph j.

[4] The parties informed the Court at oral argument that he remains in the custody
of the Commonwealth of Virginia, pending arraignment on civilian charges of a similar
nature to the charges in this case.

[5] App. Ex. XXV(a) at 49, 52.

[6] App. Ex. XXIV.

[7] App. Ex. XXV(a) at 73.

[8] R. at 66. (The pagination of the post-trial transcript of the record restarted at 1.
The August 1 record ended at page 506).

military judge also found that due to the length of the adjudged sentence, Appellant was going to be confined at Fort Leavenworth, and therefore "the convening authority's letter of recommendation was moot."[9] The military judge reasoned that the 16 August endorsement of the RLSO letter "although maybe ill-informed, was a delay and not a denial of the right to go to Ft. Leavenworth."[10] The military judge found "that the accused's plea of guilty was providently made."[11] Additionally, the military judge found that there was no prejudice from the convening authority's failure to write the letter within 10 days of sentencing.[12]

## II. DISCUSSION

**A. The Government shows beyond a reasonable doubt that any unlawful command influence (UCI) on the part of the RLSO had no possibility of prejudice.**

*1. Standards of review:*

a. <u>Unlawful command influence</u>

We review allegations of UCI de novo, accepting a military judge's findings of fact unless clearly erroneous.[13] The prohibition against UCI stems from Article 37(a), UCMJ, which currently provides: "No person subject to [the UCMJ] may attempt to coerce or, by any unauthorized means, attempt to influence the action of a court-martial . . . or any member thereof."[14] Under that statute, "no finding or sentence of a court-martial may be held incorrect on the ground of

---

[9] R. at 67.

[10] R. at 67.

[11] R. at 68.

[12] R. at 68.

[13] *United States v. Barry*, 78 M.J. 70, 77 (C.A.A.F. 2018).

[14] 10 U.S.C. § 837.

[UCI] unless the violation materially prejudices the substantial rights of the accused."[15] This is, of course, commonly understood as "actual" UCI.[16]

The defense has the initial burden of raising the issue of UCI. "The initial burden of showing potential [UCI] is low, but is more than mere allegation or speculation."[17] The evidentiary standard is "some evidence."[18] At trial, the accused must show facts which, if true, constitute UCI, and that the alleged UCI has a logical connection to the court-martial, in terms of its potential to cause unfairness in the proceedings.[19]

That said, prejudice is not presumed until the defense produces evidence of proximate causation between the acts constituting unlawful command influence and the outcome of the court-martial.[20] Put differently, "[f]or an accused to be entitled to appellate action on his case, the unlawful influence must be the proximate cause of the unfairness of his court-martial."[21]

"Once the issue is raised at the trial level, the burden shifts to the Government, which may either show that there was no UCI or show that the UCI will not affect the proceedings."[22] To overcome the presumption of prejudice once

---

[15] *Id.*

[16] *See United States v. Gilmet,* 83 M.J. 398 (C.A.A.F. 2023).

[17] *United States v. Salyer*, 72 M.J. 415, 423 (C.A.A.F. 2013) (citation omitted).

[18] *United States v. Biagase*, 50 M.J. 143, 150 (C.A.A.F. 1999).

[19] *Id.*

[20] *Id.*

[21] *United States v. Reynolds*, 40 M.J. 198, 202 (C.A.A.F. 1994).

[22] *Biagase*, 50 M.J. at 150 (citation omitted).

the Defense has made the requisite showing, a reviewing court must be convinced beyond a reasonable doubt that the UCI had no prejudicial effect on the court-martial.[23]

### b. Material breach of a plea agreement term

The interpretation of a plea agreement is a question of law which we review de novo.[24] When an accused pleads guilty pursuant to a pretrial agreement, the voluntariness of his plea hinges upon the Government's performance of those promises made in order to secure the plea of guilty from the accused.[25] Whether the Government has complied with the material terms of an agreement presents a mixed question of law and fact.[26]

Somewhat analogous to this case, which involves a post-trial letter, the Court of Appeals for the Armed Forces has held that where the issue of *pay* is a material term, a plea may be rendered improvident where the Government fails to perform (e.g., provide the requisite pay).[27] An appellant has the burden of establishing that the term or condition of the agreement was material to his decision to plead guilty, and that the Government failed to comply with that term or condition.[28] And in some cases, delayed performance (e.g., payment in full) is an insufficient remedy because the timing of performance may itself be a material term of the agreement.[29] The timing of performance is not material in every case, however.[30] Therefore, the Court must evaluate the entire record

---

[23] *United States v. Douglas*, 68 M.J. 349, 354 (C.A.A.F. 2010) (citing *Biagase*, 50 M.J. at 150).

[24] *United States v. Acevedo*, 50 M.J. 169, 172 (C.A.A.F. 1999).

[25] *United States v. Perron*, 58 M.J. 78, 82 (C.A.A.F. 2003) ("It is fundamental to a knowing and intelligent plea that where an accused pleads guilty in reliance on promises made by the Government in a pretrial agreement, the voluntariness of that plea depends on the fulfillment of those promises by the Government.").

[26] *United States v. Lundy*, 63 M.J. 299, 301 (C.A.A.F. 2006).

[27] *See United States v. Smith*, 56 M.J. 271, 279 (C.A.A.F. 2002); *United States v. Hardcastle*, 53 M.J. 299, 302 (C.A.A.F. 2000); *United States v. Williams*, 53 M.J. 293, 295 (C.A.A.F. 2000); *see also Santobello v. New York*, 404 U.S. 257 (1971).

[28] *Lundy*, 62 M.J. at 302.

[29] *See Perron*, 58 M.J. at 85.

[30] *Lundy*, 63 M.J. at 303.

to determine whether the timing of performance was material to the appellant's decision to plead guilty.[31] When the issue on appeal involves delayed timing of performance by the Government, the question of whether belated performance constitutes an adequate remedy must be assessed on a case-by-case basis.[32]

### *2. The provision at issue in this case:*

The first sentence of plea agreement paragraph 8.j. memorializes the convening authority's agreement to send a written recommendation within 10 days. The second sentence memorializes the parties' mutual understanding that the convening authority's recommendation is just that, simply a recommendation. The third sentence memorializes Appellant's agreement to participate in any sex offender treatment offered and to make truthful admissions "required for rehabilitation."[33]

Regardless of whether the sentences in paragraph 8.j. are severable from one another or from the plea agreement as a whole, we note that at the post-trial Article 39(a) session the Government conceded that the convening authority's agreement to write the recommendation was material.[34] Nonetheless, in assessing this, the military judge disagreed that the term was material, and further found that the issue was moot. This is because the length of Appellant's sentence mandated that he be confined at Fort Leavenworth under the applicable Secretary of the Navy instruction, regardless of the presence or absence of any letter from the convening authority.[35]

However, an improvident plea resulting from a material breach is not the issue that Appellant now brings to this Court. Although in the post-trial Article 39(a) Appellant asked that his pleas of guilty be set aside as improvident, Appellant is clear both in his briefing to this Court and at oral argument, that he still wants the benefit of his plea agreement and does *not* want the findings of guilty set aside by this Court. Although Appellant argues that "The CA's material breach of the plea agreement prejudiced Appellant," Appellant raises

---

[31] *Id.* (citing *Perron*, 58 M.J. at 85).

[32] *Id.* at 305 (Effron, J., concurring in part and in the result).

[33] App. Ex. XV at 9.

[34] R. at 54, 58.

[35] R. at 66–67. *See also* Depart' of the Navy, Sec'y of the Navy Manual 1640.1, *Department of the Navy Corrections Manual*, section 6301.

this Assignment of Error as one of UCI by the RLSO, rather than as an improvident plea.[36] In his brief, Appellant thus asks this Court to award 252 days of confinement credit as a remedy.[37] Because we analyze the issue raised on appeal by Appellant, which is UCI and not improvident plea, we test for prejudice.[38]

Appellant's argument fails because, even assuming, *arguendo*, that the RLSO's letter to the convening authority constitutes some evidence of UCI that affected the convening authority's decision regarding the bargained-for recommendation, the Government easily shows, beyond a reasonable doubt, that there was no prejudice. The Government disproves prejudice here in three independent ways: (1) the delay in the convening authority's writing the letter had no effect because Appellant remains in the custody of the Commonwealth of Virginia and has not yet been transferred to military custody to go to Fort Leavenworth; (2) the convening authority's letter itself, requesting confinement at Fort Leavenworth, became a legal nullity by operation of law, as a result of Appellant's sentence length; and (3) the belated performance (sending the recommendation letter on 6 September 2023) timely cured the breach, if it was a breach. Appellant was eventually turned over to the Commonwealth of Virginia and will return to military custody to serve the remainder of his sentence at Fort Leavenworth once those proceedings are resolved. Reviewing de novo, we find that the military judge's conclusion that "on 1 August, at the announcement of sentence, the convening authority's letter of recommendation was moot" is not erroneous. We are convinced beyond a reasonable doubt that there was no prejudice either from the content or timing of the RLSO's letter, or from the convening authority's delayed performance of the requirements of paragraph 8.j. of the plea agreement.

---

[36] Appellant's Br. at 12–18.

[37] Appellant's Br. at 18. At oral Argument, Appellant asked this Court to increase the credit to one year. *See* Audio Rec'g of Oral Argument at 10:15–11:20 ("I am asking the court presently to [ ] set aside one year of confinement . . . That [requested remedy was] not specifically in [my] brief.").

[38] Article 37(c). Indeed, the word "improvident" does not appear in either Appellant's Brief or Reply. We would not, in any event, provide sentence credit as a remedy for an improvident plea; rather, we would set aside the findings and sentence.

**B. The Navy has not increased the length of Appellant's sentence.**

*1. Law and Standards of Review:*

Under Article 66, UCMJ, this Court may act only with respect to the findings and sentence.[39] The Court of Appeals for the Armed forces has stated "findings" and "sentence" are terms of art defined by the President in the Rules for Courts-Martial.[40] The findings include: "(A) a summary of each charge and specification; (B) the plea(s) of the accused; and (C) the finding or other disposition of each charge and specification."[41] The sentence is the punishment adjudged by the court-martial when an accused is found guilty.[42] The Courts of Criminal Appeals have broad power to moot claims of prejudice by "affirm[ing] only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."[43]

Article 14, UCMJ, governs the delivery of offenders to the civil authorities. It provides that the delivery of a military member serving a court-martial sentence to civil authority, if followed by a conviction in a civil tribunal, "interrupts the execution of the sentence of the court-martial" which will be completed upon return to military authorities.[44]

*2. Appellant's arguments in this case regarding application of the Interstate Agreement on Detainers Act are without merit.*

In this case Appellant pleaded guilty and does not challenge the findings.[45] Nor does Appellant challenge the adjudged sentence including 13 years of confinement, a dishonorable discharge, total forfeitures, and reduction to

---

[39] Article 66(d)(1)(A), UCMJ, 10 U.S.C. § 866(d)(1)(A); *See United States v. Williams* 85 M.J. 121, 2024 CAAF LEXIS 501 *11–12 (C.A.A.F. 2024).

[40] *Williams* 85 M.J. 121, 2024 CAAF LEXIS at *11–12.

[41] Rule for Courts-Martial (R.C.M.) 1101(a)(1)(A)-(C).

[42] R.C.M. 1003(a).

[43] *United States v. Avellaneda*, 84 M.J. 656, 661 (N.M. Ct. Crim. App. 2024) (citing *United States v. Wheelus*, 49 M.J. 283 (C.A.A.F. 1998)); *see generally United States v. Bell*, 60 M.J. 682 (N-M. Ct. Crim. App 2004).

[44] Article 14(b), UCMJ, 10 U.S.C. § 914.

[45] *See* Appellant's Br., *passim*; *see also* R at 283, 377. Appellant was facing 32 years of confinement (R. at 342), and the plea agreement limited confinement to a rage of 8-15 years. (App. Ex. XV, at 11).

paygrade E-1. Indeed, as the requested relief here, Appellant asks this Court to "order compliance with the sentence as adjudged."[46] Appellant's argument is that the Navy violated a separate federal statute, the Interstate Agreement of Detainers Act,[47] in a manner that has increased the length of Appellant's sentence.[48] Further, Appellant argues that Article 14 has been "repealed by implication under the facts of this case."[49]

Appellant's argument rests on dubious foundations. Primarily, Appellant's argument that "execution of any Navy confinement that occurs beyond Appellant's adjudged term of confinement will constitute an additional term of confinement" (even if it eventually happens) is presently unripe, inchoate, and purely speculative. This is in part due to the fact that Appellant's charges brought by the Commonwealth of Virginia are presently unresolved, as we were informed at oral argument by counsel for both parties. Thus, we do not presently know whether: (1) Appellant will be convicted; (2) if so, what the sentence will be; (3) when he will return to military control; and (4) when he will be released from military confinement after that happens.[50] Separately, we are unpersuaded that the communications between the Commonwealth of Virginia prosecutor and the Navy constitute a "detainer" within the meaning of the Act.[51] Finally, we reject the legal contention that the Interstate Agreement on Detainers Act has somehow repealed Article 14 in this case or otherwise. We find Appellant's arguments to be without merit, and further decline to use our considerable discretion to reduce his sentence to moot his claim of prejudice.[52]

---

[46] Appellant's Br. at 29, 34.

[47] 18 U.S.C. Appx. § 2.

[48] Appellant's Br. at 19.

[49] Appellant's Br. at 29.

[50] Of course, if Appellant is eventually held in military confinement past the end of his sentence he may bring a petition for a writ of habeas corpus in a federal court with appropriate jurisdiction.

[51] Appellant was eventually delivered to the civilian authorities as a result of a capias warrant.

[52] *See United States v. Matias*, 25 M.J. 356 (C.M.A. 1987).

## III. CONCLUSION

We note that, although not raised as an AOE, the Entry of Judgment does not comply with Rule for Courts-Martial 1111(b)(1) and our decision in *United States v. Wadaa* in that it: (1) provides insufficient summaries of the referred specifications; (2) fails to include the findings and dispositions for the referred charges; and, (3) fails to accurately reflect the findings for all referred specifications.[53] Although we find no prejudice, Appellant is entitled to have court-martial records that correctly reflect the content of his proceeding.[54] In accordance with R.C.M. 1111(c)(2), we modify the EOJ and direct that it be included in the record.

After careful consideration of the record and briefs of appellate counsel, as well as the oral arguments heard on 13 February 2025, we have determined that no prejudicial error occurred in this case.

The findings and sentence are **AFFIRMED**.[55]

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[53] 84 M.J. 652, 654 (N-M. Ct. Crim. App. 2024) (citations omitted).

[54] *United States v. Crumpley*, 49 M.J. 538, 539 (N-M. Ct. Crim. App. 1998).

[55] Articles 59 & 66, UCMJ, 10 U.S.C. §§ 859, 866.

# United States Navy–Marine Corps Court of Criminal Appeals

| | |
|---|---|
| **UNITED STATES** | NMCCA NO. 202300286 |
| v. | **ENTRY**<br>**OF**<br>**JUDGMENT** |
| **Eric C. BABBITT**<br>**Logistics Specialist Second Class**<br>**Petty Officer (E-5)**<br>**U.S. Navy** | |
| | *As Modified on Appeal* |
| *Accused* | **31 March 2025** |

On 1 August 2023, the Accused was tried at Region Legal Service Office Mid-Atlantic, Norfolk, Virginia, by a general court-martial consisting of a military judge sitting alone. Military Judge Ryan J. Sears presided.

## FINDINGS

The following are Logistic Specialist Second Class Petty Officer Babbitt's pleas and the Court's findings to all offenses the convening authority referred to trial:

**Charge I:**  **Violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880.**

> *Plea:* Not Guilty.
>
> *Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Specification 1:**  **Attempted rape of a child who had not attained the age of 12 on or about 27 July 2022.**

> *Plea:* Not Guilty.
>
> *Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Specification 2:**  **Attempted sexual abuse of a child who had not attained the age of 12 by communicating indecent language on or about 27 July 2022.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Charge II:    Violation of Article 107, UCMJ, 10 U.S.C. § 907.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Specification:    False official statement on or about 16 August 2019.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Charge III:   Violation of Article 120b, UCMJ, 10 U.S.C. § 920b.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Specification 1:   Rape of a child who had not attained the age of 12 between on or about March 2019 to August 2019.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Specification 2:   Sexual abuse of a child who had not attained the age of 12 by indecent exposure between on or about March 2019 to August 2019.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Specification 3:   Sexual abuse of a child who had not attained the age of 12 by sexual contact between on or about March 2019 to August 2019.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Specification 4:** **Sexual abuse of a child who had not attained the age of 12 by sexual contact between on or about May 2019 to August 2019.**

*Plea:* Not Guilty.

*Finding:* Withdrawn and dismissed without prejudice to ripen into prejudice upon completion of appellate review.

**Charge IV:** **Violation of Article 128, UCMJ, 10 U.S.C. § 928.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification:** **Assault consummated by a battery upon a child who had not attained the age of 16 years by touching her unclothed back and side between on or about March 2019 to August 2019.**

*Plea:* Guilty, except for the words "between on or about March 2019 to August 2019" and substituting therefor the words "on or about July 2019," and except for the words "unclothed back and side" and substituting therefor the words "back and side while she was wearing a bathing suit."

*Finding:* Guilty, except for the words "between on or about March 2019 to August 2019" and substituting therefor the words "on or about July 2019," and except for the words "unclothed back and side" and substituting therefor the words "back and side while she was wearing a bathing suit."

**Additional Charge:** **Violation of Article 80, UCMJ, 10 U.S.C. § 880.**

*Plea:* Guilty.

*Finding:* Guilty.

**Specification:** **Attempted sexual abuse of a child who had not attained the age of 12 by indecent exposure on divers occasions or about 27 July 2022.**

*Plea:* Guilty.

*Finding:* Guilty.

**Additional Charge II:** Violation of Article 120b, UCMJ, 10 U.S.C. § 920b.

*Plea:* Guilty.

*Finding:* Guilty.

**Specification:** **Sexual abuse of a child who had not attained the age of 16 years, by indecent conduct between on or about March 2019 and on or about August 2019.**

*Plea:* Guilty.

*Finding:* Guilty.

# SENTENCE

On 1 August 2023, a military judge sentenced Logistics Specialist Second Class Petty Officer (LS2) Babbitt to the following:

**Confinement for a total of 13 years.**

*Sole Specification of Charge IV: confinement for 2 years.*

*Sole Specification of the Additional Charge: confinement for 6 years.*

*Sole Specification of Additional Charge II: confinement for 5 years.*

*All periods of confinement shall run consecutively.*

*LS2 Babbitt was credited with having served 422 days of confinement.*

**Dishonorable discharge.**

**Total forfeiture of pay and allowances.**

**Reduction to E-1.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

4